MONACO, J.
The appellant, Alan Sowerby, appeals the judgment and sentence associated with his conviction for driving while his license was permanently revoked. Because the stop of Mr. Sowerby’s vehicle was violative of the Fourth Amendment to the United States Constitution, we reverse.
The premise underscoring the analysis of this case rests on the principle that the stopping of an automobile by a law enforcement officer constitutes a seizure and detention and is governed by the Fourth Amendment to the United States Constitution. See Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Jones, 483 So.2d 433 (Fla.1986). If it is an investigative detention, it must be temporary and it must last no longer than is necessary to effectuate the purpose of the stop. See Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).
The adjudicative facts are that Mr. Sowerby’s vehicle was stopped by a law enforcement officer because the officer thought that the license plate on the vehicle was improperly mounted as it was not within the mounting brackets normally found on the back of an automobile. The license plate, however, was a dealer plate with a magnetic back. The testimony reveals that although the plate was not within the brackets on the trunk of the car, it was mounted on the trunk and was “not higher than 60 inches and not lower than 12 inches from the ground and no more than 24 inches to the left or right of the centerline of the vehicle,” as required by section 316.065(1), Florida Statutes (2010). That is to say, the dealer plate was, in fact, lawfully mounted and within the statutory limits, and thus the stop could not have been based on a founded suspicion that a crime had been, was being, or was about to be committed. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), cert. denied, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998).
As the police officer neared the car, he testified that he noticed that the license plate was a dealer plate, and not an ordinary license plate. In any event, when the *331 officer approached Mr. Sowerby, he told him the reason for the stop and asked to see Mr. Sowerby’s drivers’ license. Mr. Sowerby at that time admitted that he had none, and was placed under arrest. After he was charged with driving while his license was permanently revoked, Mr. Sow-erby moved to suppress all evidence and statements made during the traffic stop, arguing that the law enforcement officer lacked the requisite probable cause or reasonable suspicion to believe that a crime had been, was being, or was about to be committed. The stop, in his view, was illegal. The trial court decided otherwise.
A trial court’s ruling on a motion to suppress is subject to a mixed standard of review. An appellate court is bound by such of a trial court’s findings of fact as are supported by competent, substantial evidence; however, the application of the law to those facts is subject to de novo review. See State v. K.N., 66 So.3d 380, 384 (Fla. 5th DCA 2011).
An application of the law to the facts of this case suggests that the vehicle stop was unjustified and that the suppression motion should, therefore, have been granted. State v. Diaz, 850 So.2d 435 (Fla.), cert. denied, 540 U.S. 1075, 124 S.Ct. 936, 157 L.Ed.2d 745 (2003) is instructive in this regard. In Diaz, a case involving a temporary license plate, the Florida Supreme Court held that as soon as an officer determines that the basis for his or her stop is invalid, the officer, without more, no longer has reasonable grounds to further detain a driver or to subject the driver to a subsequent personal examination, including the requirement to provide further information. More specifically, the court held:
[0]nce a police officer has totally satisfied the purpose for which he has initially stopped and detained the motorist, the officer no longer has any reasonable grounds or legal basis for continuing the detention of the motorist. Here, as soon as the officer determined the validity of Mr. Diaz’s temporary tag, he no longer had reasonable grounds or any other basis, legal or otherwise, to further detain Mr. Diaz. Having completely ascertained the validity of the temporary license plate, the law enforcement officer no longer had any cause or suspicion supporting the existence of a traffic or any other violation. Further, under the facts presented here, he certainly had no articulable or reasonable suspicion to support the detention of Mr. Diaz. There was nothing whatsoever questionable about the vehicle or those persons in the vehicle and there simply was no hint of any criminal activity. While the officer’s reason for the initial stop may arguably have been legitimate, once that bare justification had been totally removed, the officer’s actions in further detaining Mr. Diaz equated to nothing less than an indiscriminate, baseless detention....
Thus, even if we assume that the officer made a proper initial stop of Mr. Sower-by’s vehicle,[1] he should have ceased asking for additional information when he found that the plate was, in fact, properly placed.[2] See also Hilgeman v. State, 790 So.2d 485 (Fla. 5th DCA 2001) (a law enforcement officer is charged with knowledge of the law and his misapprehension of the law will not establish probable cause for an arrest for a violation).
*332 The State now argues, however, that the officer properly stopped Mr. Sow-erby’s car because he had a reasonable suspicion that the car was in violation of that part of section 316.605(1), Florida Statutes, saying that:
[A]ll letters, numerals, printing, writing, and other identification marks upon the plates regarding the word “Florida,” the registration decal, and alphanumeric designation shall be clear and distinct and free from defacement, mutilation, grease, and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front.
The State suggests that the stop was valid, as it turns out, because “a man of reasonable caution” approaching the vehicle with its license plate “in an unlighted area as darkness approached” would “believe that the tag was not plainly visible and legible from 100 feet.” Thus it argues that while it may be true that the plate was within the locational requirements of the statute, it was probably not visible and legible 100 feet from the rear of the car, as required by the statute.
There are three flaws with this argument. First, the State presented no evidence at all that the plate was not visible from 100 feet. Second, the officer never testified that the visibility requirement was the reason he stopped the car. Finally, this is not the argument made by the State below.
Accordingly, we reverse the judgment and sentence and remand to the trial court for further action consistent with this opinion.
SAWAYA and JACOBUS, JJ., concur.

. See State v. Tullis, 970 So.2d 912 (Fla. 5th DCA 2007).

. We note that unlike State v. Baez, 894 So.2d 115 (Fla.2004), there was no evidence that the officer here had a reasonable basis and reasonable suspicion to investigate the motorist further after the stop.