J-S36017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARVIN M. JACKSON | |
| Appellant | No. 1501 WDA 2014 |

Appeal from the Judgment of Sentence April 4, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): CP-02-CR-0007398-2012

BEFORE:  PANELLA, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                        **FILED JULY 21, 2015**

Following a bench trial, the trial court found Marvin Jackson guilty of burglary,[1] criminal trespass,[2] theft by unlawful taking,[3] receiving stolen property[4] and criminal mischief.[5]  The court sentenced Jackson to 35-70 months' imprisonment and five years' consecutive probation for burglary and imposed no further penalty on the remaining convictions.  Jackson filed

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3502(a)(2).

[2] 18 Pa.C.S. § 3503.

[3] 18 Pa.C.S. § 3921.

[4] 18 Pa.C.S. § 3925.

[5] 18 Pa.C.S. § 3304.

timely post-sentence motions challenging the weight of the evidence, which were denied by operation of law. Jackson filed a timely notice of direct appeal and a timely Pa.R.A.P. 1925(b) statement. The trial court filed a Pa.R.A.P. 1925(a) opinion reasoning that the evidence was sufficient to support Jackson's convictions, and that the evidence did not shock its conscience. In this appeal, Jackson challenges the sufficiency and weight of the evidence underlying his convictions. We affirm.

The following evidence was adduced during trial: upon returning home on the evening of May 10, 2012 following a nearly two-week work trip to Washington, D.C, Dawn DePasquale discovered that someone had broken into her home at 2415 Marbury Road, Churchill Borough, while she was gone. N.T., 11/20/13, at 7-9, 19-20. DePasquale found her bedroom ransacked, with drawers turned over and jewelry boxes strewn about. *Id*. at 8, 22-23. Jewelry, two flat-screen television sets and multiple computers were missing, along with cash and other items. *Id*. at 8, 18-19. The approximate value of the missing items was $10,000.00. *Id*. at 9.

Nobody was permitted to enter DePasquale's residence while she was away except her cleaning service, Affordable Maids. *Id*. An Affordable Maids employee visited the residence once while DePasquale was away and reported that everything appeared to be in order. *Id*. at 20. Jackson does not work for Affordable Maids. *Id*. at 19.

DePasquale's bedroom could be accessed through a set of sliding glass doors that led out to her backyard. *Id*. at 8, 11, 23. The doors were out of

sight of most neighbors. *Id*. at 8, 11, 23-24. The screen had been intact and the doors had been closed prior to DePasquale leaving town. *Id*. at 8, 22-23. Upon her return, however, the doors, including the screen door, were open, and the screen had been cut. *Id*. at 8, 11. DePasquale contacted police, and the next day, a forensic team from the District Attorney's Office processed the crime scene for fingerprints. *Id*. at 24. The team found a fingerprint belonging to Jackson on the locking mechanism of the sliding screen door inside the location where the screen had been cut. *Id*. at 26.

Jackson was arrested and charged with burglary. *Id*. He told the officer investigating the burglary, Officer Fabrizi, that he had not been in the Churchill Borough area since January and had never been to 2415 Marbury Road. *Id.* at 30. At that point, the officer told Jackson that his fingerprint was found at that location. Jackson replied that if he had done a burglary, he would have worn gloves. *Id*. at 30-31.

At the preliminary hearing several days later, Jackson told Officer Fabrizi that his memory had been jogged, and that he may have been at DePasquale's home on a prior occasion doing some work for a man named "D". *Id*. at 31. Officer Fabrizi mentioned this information to DePasquale, who said that she had a past relationship with a man who went by the name "D" — Dennis Seraly — but she did not recall Jackson. *Id*. at 13-14, 31. A few months later, DePasquale contacted Officer Fabrizi and told him that it

- 3 -

was possible that Jackson had been at her home on one occasion nine months before the burglary, when Seraly brought a man to her house to move and reassemble a piece of furniture. *Id*. at 10, 13-14, 31-32. DePasquale stated, however, that Jackson would not have had access to the sliding doors in the bedroom on that date, because they were blocked by other pieces of furniture at that time. *Id*. at 12-13.

> Jackson raises two issues in this appeal:
>
> Did the Commonwealth present insufficient evidence to establish beyond a reasonable doubt that [] Jackson committed each of the counts [for] which he was convicted?
>
> Was the verdict rendered so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail?

Brief For Appellant, p. 4.

Our standard of review for a challenge to the sufficiency of the evidence is:

> [W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn

- 4 -

> from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Troy*, 832 A.2d 1089, 1092 (Pa.Super.2003) (citations omitted); *see also Commonwealth v. Bostick*, 958 A.2d 543, 560 (Pa.Super.2008) (quoting *Commonwealth v. Smith*, 956 A.2d 1029, 1035-36 (Pa.Super.2008)).

The burglary statute provides in relevant part: "A person commits the offense of burglary if, with the intent to commit a crime therein, [he] … enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present." 18 Pa.C.S. § 3502(a)(2). We will uphold a burglary conviction "where fresh fingerprints are found at the place of illegal entry to private burglarized premises where a defendant's presence is unexplained." *Commonwealth v. Donohue*, 62 A.3d 1033, 1036 (Pa.Super.2013). "Similarly, if the prints are discovered in a place accessible only by force or on objects that the defendant could not have contacted under legitimate circumstances, a conviction will be upheld." *Id*.

Viewed in the light most favorable to the Commonwealth, the evidence is sufficient to establish Jackson's guilt for burglary. DePasquale's bedroom in her residence was accessible by a sliding screen door that led out to her backyard. The door was closed when DePasquale left on her trip but was open on her return. The screen on this door was intact when DePasquale

left but was cut on her return. Jackson's fingerprint was found on the locking mechanism of the door. DePasquale's bedroom was ransacked, and approximately $10,000.00 in jewelry, televisions, computers, cash and other items were stolen. The only persons whom DePasquale permitted inside her residence during her trip were Affordable Maids employees, but Jackson did not work for Affordable Maids. There was no innocent explanation for the presence of Jackson's fingerprint on the sliding screen door at the crime scene. The burglarized premises were a private residence, and Jackson had no right to be there. Thus, Jackson's challenge to the sufficiency of the evidence underlying his burglary conviction fails. *Donohue*, 62 A.3d at 1037 (evidence of defendant's fingerprints on opened bottle of soda that victim had left inside kitchen cabinet of home, by itself, was sufficient to support convictions for burglary and related offenses, where victim did not know defendant and had not given him permission to enter home, bottle was unopened when victim left residence, and there was no innocent explanation for presence of defendant's fingerprints); *Commonwealth v. Price*, 420 A.2d 527, 529-30 (Pa.Super.1980) (evidence sufficient to support convictions for burglary and theft by unlawful taking, where all doors were locked and windows closed when complainants left their house, house was ransacked and certain items were missing when they returned, police discovered defendant's fingerprint on television set in living room near open window, complainant wife had not given anyone permission to enter the

house and did not know defendant, and defendant was unable to explain presence of his fingerprint on television).

Jackson contends that the evidence against him was insufficient, because he could have innocently left his fingerprint on the locking mechanism of the screen door nine months earlier on the day he helped "D" move furniture in DePasquale's house. DePasquale refuted this claim at trial by testifying that there was "no way" that Jackson could have accessed the door on that occasion because the door was blocked at that time by other furniture. Jackson offers that the bedroom doors likely were only blocked from the inside, not the outside, suggesting that he could have left his fingerprints there in an attempt to enter from the outside nine months earlier. Under the sufficiency of the evidence standard, Jackson is not entitled to this inference, because we must view the record in the light most favorable to the Commonwealth. DePasquale stated in no uncertain terms that the doors were blocked and inaccessible to Jackson nine months before the burglary, and it is not for him to suggest that they were perhaps only blocked on one side during the remodeling project.

The same evidence supports Jackson's conviction for theft by unlawful taking under 18 Pa.C.S. § 3921, which provides: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." The evidence demonstrates that Jackson broke into DePasquale's residence and took multiple types of

movable property (jewelry, televisions, computers, cash and other items) with intent to deprive DePasquale of this property.

Jackson waived his challenge to the sufficiency of the evidence underlying his other convictions for criminal trespass, receiving stolen property and criminal mischief by failing to challenge these convictions in his Pa.R.A.P. 1925(b) statement. *See Commonwealth v. Carpenter*, 955 A.2d 411, 415 (Pa.Super.2008) (defendant waived challenge to sufficiency of evidence underlying conspiracy conviction by failing to place this claim in court-ordered statement of errors complained of on appeal).

Jackson's second argument on appeal is that he is entitled to a new trial because the verdict is contrary to the weight of the evidence. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Forbes*, 867 A.2d 1268, 1273–74 (Pa.Super.2005). A new trial is not warranted because of "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, 665 (2007). Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.* On appeal, "our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict

did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa.Super.2012). An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. *Forbes*, 867 A.2d at 1273–74.

Jackson claims that the verdict shocks the conscience because the "only evidence" linking him to the burglary was the fingerprint at a home that he had permission to enter on one occasion nine months earlier. Brief for Appellant, at 16. We disagree. Not only was Jackson's fingerprint present, but it was also on the same screen door that was slashed in order for the perpetrator to gain illegal entry into the home – a door to which Jackson did not have access during his visit nine months earlier. It also is logical to infer that if Jackson had left a fingerprint nine months earlier, it would not have been recoverable due to exposure to the elements. It also is significant that upon his arrest, Jackson falsely stated that he had never been to DePasquale's residence. He only admitted that he had been there after the investigating officer confronted him with the evidence of his fingerprint. The implausibility of Jackson's contention that he left the fingerprint on the door nine months before the burglary, combined with his dishonest answer to the investigating officer following his arrest, severely damages the credibility of his position. The trial court thus acted within its

discretion by determining that the evidence did not shock its conscience. Johnson is not entitled to a new trial.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/21/2015